# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JONAH D.,

             Plaintiff,

       v.

LELAND DUDEK,
ACTING COMMISSIONER OF SOCIAL
SECURITY,[1]

          Defendant.

No. 22 CV 06460

Magistrate Judge McShain

### MEMORANDUM OPINION AND ORDER

Plaintiff Jonah D. brings this action for judicial review of the Social Security Administration's (SSA) decision denying his application for benefits. For the following reasons, plaintiff's request to reverse the SSA's decision [17][2] is denied, defendant's request for summary judgment [21] is granted, and the decision denying the application for benefits is affirmed.

## Background

### A.    Procedural History

On March 9, 2020, plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. [15-1] 13. In both applications, plaintiff alleged a disability onset date of June 5, 2016, based on the following alleged impairments: autism, bipolar disorder, and general anxiety disorder. [*Id.*] 13, 49. Plaintiff's claims were denied initially on December 21, 2020, and upon reconsideration on February 8, 2021. [*Id.*] 13. Plaintiff requested a hearing, which was originally scheduled for July 15, 2021 before an administrative law judge (ALJ). [*Id.*] 13, 35–40. The hearing was to be conducted over the phone due to the extraordinary circumstances presented by the COVID-19 Pandemic. [*Id.*] 13. On July 14, 2021, plaintiff's representative requested

---

[1] In accordance with Fed. R. Civ. P. 25(d), Leland Dudek, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Martin O'Malley.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [15, 16], which refer to the page numbers in the bottom right corner of each page.

postponement of the hearing because plaintiff "was on an Amtrak train trip to Michigan to see a band." [*Id.*] 13, 415. The ALJ denied the request, finding that plaintiff had not demonstrated good cause warranting postponement. [*Id.*] 13, 37. At the July 15, 2021 hearing, plaintiff was not present and plaintiff's counsel withdrew plaintiff's previous consent and objected to holding the hearing over the phone. [*Id.*] 37–39. No substantive hearing was held. [*Id.*] 13. In rescheduling the hearing, plaintiff again agreed to conduct a telephone hearing. [*Id.*] The hearing proceeded on February 10, 2022. [16-1] 2158–86. On March 2, 2022, the ALJ issued an unfavorable decision finding plaintiff not disabled. [15-1] 13–28.

The Appeals Council denied review on September 21, 2022, [15-1] 1, rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955 & 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[3]

## B.  The ALJ's Decision

In evaluating a claim for disability benefits, ALJs follow a five-step, sequential process. *Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020). The ALJ must evaluate the following:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner] ...; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (alterations in original) (quoting *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000)); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. *Fetting*, 62 F.4th at 336 (citing *Clifford*, 227 F.3d at 868). "At step five, the burden shifts to the agency to show that 'there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations.'" *Id.* at 336–37 (quoting *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022)); 20 C.F.R. § 416.960(c)(2).

The ALJ reviewed plaintiff's disability claim in accordance with the SSA's five-step sequential evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 5, 2016, the alleged onset date. [15-1] 16. At step two, the ALJ found that plaintiff has the following severe impairments: autism spectrum disorder and anxiety. [*Id.*] At step three, the ALJ found that

---

[3] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [7].

plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.*] In assessing the paragraph B criteria, the ALJ found that plaintiff has a moderate limitation in all four areas of functioning. [*Id.*] 16–19. Before turning to step four, the ALJ determined that plaintiff has the residual functional capacity (RFC) to perform work at all exertional levels with no restriction on his ability to lift and/or carry, sit, stand, or walk throughout an eight-hour workday, but with the following other restrictions:

> The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery. The claimant is further limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. He is not capable of multitasking, or work requiring considerable self-direction. He can work at a consistent production pace. He is further precluded from work involving direct public service, in person or over the phone. The claimant can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks.

[*Id.*] 19. At step four, the ALJ concluded that plaintiff has no past relevant work because his earnings have not exceeded the substantial gainful activity threshold. [*Id.*] 27. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including janitor, laundry worker, and dishwasher. [*Id.*] 27–28. Accordingly, the ALJ found that plaintiff has not been under a disability as defined in the Social Security Act from June 5, 2016 through the date of the decision. [*Id.*] 28.

## Legal Standard

Courts "apply a very deferential standard of review to the ALJ's decision." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (citation and internal quotations omitted). In its "extremely limited" role, *id.*, the Court must "ensur[e] that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024) (citing *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). *See also Stephens*, 888 F.3d at 327 ("Although this Court reviews the record as a whole, it cannot

substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). *See also Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (same). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). "If substantial evidence supports the ALJ's conclusions, the court 'must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding.'" *Chavez*, 96 F.4th at 1021 (quoting *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016)).

## Discussion

Plaintiff argues that the ALJ erred in two ways: (1) the ALJ failed to explain how plaintiff's moderate limitations in the paragraph B criteria translate into an ability to perform full-time work and (2) the ALJ's rejection of each treating source statement is not supported by substantial evidence.

## A.    Mental Impairments and Limitations

Plaintiff argues that the RFC did not adequately account for plaintiff's mental limitations and that the ALJ failed to properly assess the paragraph B functional criteria. [17] 7–13. Plaintiff asserts that in determining that plaintiff has no more than a moderate limitation in all four areas of functioning, the ALJ "acknowledged a wide array of documented deficits but repeatedly relied upon false equivalencies to cancel out those deficits." Plaintiff argues that the ALJ's finding that plaintiff is capable of sustaining full-time work is not supported by substantial evidence and that the ALJ failed to properly assess plaintiff's functional deficits within the context of a full-time work environment. Throughout this section, plaintiff also criticizes aspects of the ALJ's subjective symptom analysis, such as the ALJ's consideration of treatment and activities of daily living.

### 1.    RFC Mental Limitations and Paragraph B Criteria

Plaintiff challenges the ALJ's assessment of plaintiff's abilities in concentration, persistence, and pace and finding that plaintiff has a moderate limitation in this area of functioning. [15-1] 17. The ALJ acknowledged that plaintiff reported a history of abuse with nightmares and flashbacks. The ALJ noted that plaintiff "denied increased energy, racing thoughts or manic symptoms, but admitted to perseverative and repetitive thoughts and actions," and that plaintiff "can get stuck or perseverate on topics that cause him stress." However, the ALJ also observed

that plaintiff uses his time well, has excellent attendance and punctuality, takes online classes through a local community college, is able to follow a calendar, and has been able to maintain a work schedule at three separate jobs throughout the relevant period. Citing a wealth of treatment records and exam notes, the ALJ noted that plaintiff "is consistently alert and fully oriented . . . but has demonstrated decreased attention and concentration" and that plaintiff's "thought processes are generally intact" but that plaintiff has "at times . . . demonstrated disorganized, preoccupied, or irrational thought processes with flight of ideas." [*Id.*] 17–18, 22. The ALJ noted that plaintiff denies auditory or visual hallucinations. [*Id.*] 18. Based on this review of the record, the ALJ accounted for plaintiff's moderate limitation in concentrating, persisting, or maintaining pace by limiting plaintiff to "simple, routine tasks performed at an average production pace with simple decision making, no multitasking, and no work requiring considerable self-direction." Later in the decision, the ALJ specifically addressed plaintiff's argument that he is unable to sustain work activity due to excessive absences and because he will be off task for 25% of the workday. [*Id.*] 22. The ALJ again discussed the record evidence related to plaintiff's abilities in concentration, persistence, and pace and found that this degree of limitation is not supported by the record. The ALJ nevertheless imposed significant limitations based on plaintiff's "intermittently impaired thought processes, unspecified degree of decreased attention and concentration, and tendency to perseverate."

Plaintiff criticizes the ALJ for finding that plaintiff "has been able to sustain work activity throughout the relevant period, albeit on a part time basis" and that there is "no evidence of excessive absences or off task behavior when performing any of the claimant's work." [15-1] 22. Plaintiff argues that the ALJ improperly relied on plaintiff's "admirable ability to work part-time" and that the Seventh Circuit has cautioned ALJs not to draw conclusions about a plaintiff's successful ability to work full time based on part-time employment. [17] 9 (citing *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017)). However, the ALJ specifically acknowledged that plaintiff's work experience was part time, and this was merely one observation of many the ALJ made in discussing plaintiff's abilities in concentration, persistence, and pace. The ALJ did not solely rely on plaintiff's work activity nor equate plaintiff's part-time work with an ability to perform full-time work.

Plaintiff further argues that even accepting the ALJ's "highly suspect labeling" of plaintiff's paragraph B limitations as "moderate," this does not mean that plaintiff would be able to sustain the requirements of full time work, no matter how simple the tasks. [17] 11 (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619–20 (7th Cir. 2010); *Winsted v. Berryhill*, 915 F.3d 466 (7th Cir. 2019); *Sandra R.W. v. Comm'r of Soc. Sec.*, No. 20-CV-01368, 2022 WL 970583 (S.D. Ill. Mar. 31, 2022)). Plaintiff argues that although particular words are not required, the *absence* of the phrase "moderate difficulties with concentration, persistence, and pace" in the RFC or the hypothetical posed to the vocational expert (VE) "renders the finding suspect at best."

5

[*Id.*] 11–12 (citing *Winsted*, 915 F.3d at 471; *DeCamp v. Berryhill*, 916 F.3d 671, 673–74 (7th Cir. 2019); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)). Plaintiff's argument thus appears to be that the ALJ failed to adequately account for plaintiff's limitations because neither the RFC nor the hypothetical posed to the VE specifically referred to a "moderate limitation in concentration, persistence, and pace." Additionally, plaintiff's cited cases reflect that the Seventh Circuit has long criticized "generically confining claimants to 'routine tasks and limited interactions with others'" because it "might not adequately capture a claimant's limitations." *Jozefyk*, 923 F.3d at 498; *DeCamp*, 916 F.3d at 676; *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014)). But that is not what the ALJ did here; the ALJ imposed far greater and more specifically tailored restrictions than merely limiting plaintiff to "simple, routine, repetitive tasks."

In discussing the paragraph B criteria, the ALJ's decision explicitly stated that he was accounting for plaintiff's moderate limitation concentrating, persisting, or maintaining pace by limiting plaintiff to "simple, routine tasks performed at an average production pace with simple decision making, no multitasking, and no work requiring considerable self-direction." [15-1] 17–18. The ALJ then provided the following specific limitations in the RFC:

> The claimant is further limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. He is not capable of multitasking, or work requiring considerable self-direction. He can work at a consistent production pace.

[*Id.*] 19. In posing a hypothetical to the VE, the ALJ included the following limitations that echo these restrictions:

> This individual is further limited to simple, routine tasks. Is limited to work that involves no more than simple decision making. He can choose amongst a limited number of anticipated options, but he's not able to come up with creative solutions to novel situations. He should experience no more than occasional and minor changes in the work setting in terms of work place, work processes, and work products. I want jobs where the individual has a frequent idea each day of what's going to be expected of him. Kind of like those expectations to generally remain unchanged throughout the course of a daily work duty. This individual is limited to work that involves the exercise of only simple judgment. He's better dealing with a concrete rather than the abstract and better dealing with things, rather than people. He is not capable of multitasking. He should be allowed to complete one task before he moves to another task. He is not capable of work that requires considerable

6

self-direction. When he completes one task, the next task should be immediately obvious, either because the work is presented to him at his workstation or because he has a short checklist he can refer to. He can work at a consistent production pace.

[16-1] 2181. Some of this language that the ALJ incorporated is found in the opinions of the state agency psychological consultants, which the ALJ found persuasive and "supported by and consistent with the record, as it existed at the time their opinions were issued."[4] [15-1] 23–24. When accounting for a claimant's limitations in both the RFC and the hypothetical to the VE, "an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019). Specifically, in explaining plaintiff's limitations in concentration, persistence, and pace, the state agency consultants provided the following narrative summary:

> The medical evidence, including the PCE & ADLs, indicates that the claimant can maintain the concentration and persistence necessary to carry out simple tasks in a reasonably punctual fashion and consistent pace in a typical work environment. He would have no difficulty attending work regularly and would require no special supervision beyond what is commonly provided in an ordinary work setting. Overall, his mental MDI would not interfere with his ability to complete routine work tasks.

[15-1] 61, 80, 103, 126. *See also* [*id.*] 63, 82, 105, 128 (stating in summary at the end of their assessment that plaintiff "retains the mental capacity for work related activities that involve simple instructions and routine/repetitive tasks, with limited social demands"). Upon considering the entire record, including plaintiff's hearing testimony, the ALJ found that even greater limitations than these imposed by the state agency consultants were warranted and thus "adopted additional functional limitations." [*Id.*] 24.

Although the ALJ did not use the phrase "moderate difficulties with concentration, persistence, and pace" in either the RFC itself or in the hypothetical, "there is no magic words requirement." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). The Seventh Circuit has never "insisted . . . on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619. All that is required is "that 'both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.'"

---

[4] The ALJ acknowledged that the state agency consultants did not review the entire record but found that "the evidence received at the hearing level did not contain any new or material evidence that would suggest a" greater limitation or otherwise diminish the persuasiveness of the consultants' opinions. [15-1] 23–24.

*Burmester*, 920 F.3d at 511 (quoting *Varga*, 794 F.3d at 813). In other words, "[t]hough an RFC assessment need not recite the precise phrase 'concentration, persistence, or pace,' any alternative phrasing must clearly exclude those tasks that someone with the claimant's limitations could not perform." *Ann S. v. Saul*, No. 19 CV 1661, 2021 WL 354001, at *7 (N.D. Ill. Feb. 2, 2021) (quoting *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019)). *See also O'Connor-Spinner*, 627 F.3d at 619 (noting the court has "let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform"). Plaintiff has not explained how the ALJ's alternative phrasing and significant limitations failed to do that here. As noted above, the ALJ specifically acknowledged that the record demonstrates "intermittently impaired thought processes, unspecified degree of decreased attention and concentration, and tendency to perseverate," but plaintiff "cites no evidence that those deficits keep him from performing simple, routine, and repetitive tasks." *Jozefyk*, 923 F.3d at 498. Nor does plaintiff demonstrate how the ALJ's additional limitations were insufficient or suggest what the ALJ failed to include in the RFC or hypothetical that would have adequately accounted for his moderate limitation in concentration, persistence, and pace. *See, e.g.*, *Jozefyk*, 923 F.3d at 498 ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none."). The Court finds plaintiff has identified no error in the ALJ's assessment of plaintiff's moderate limitation in concentration, persistence, and pace, how the ALJ accounted for this limitation in the RFC, or how the ALJ presented this limitation to the VE in the hypothetical.

Plaintiff also challenges the ALJ's assessment of his abilities in adapting or managing himself. In this area of functioning, the ALJ found that plaintiff has a moderate limitation. [15-1] 18. The ALJ summarized in great detail the activities and tasks plaintiff is capable of, as demonstrated in the record evidence (including a third party function report from plaintiff's mother) and plaintiff's hearing testimony, such as managing his personal care; going out alone and traveling independently by using public transportation and his bicycle, including working as a Door Dash delivery driver via bicycle; traveling out of state without family using trains and an airplane; preparing simple foods; shopping, both in store and online; doing household chores like vacuuming, cleaning bathrooms, and doing the dishes; walking his siblings to school; and attending concerts. The ALJ also acknowledged that plaintiff does not cook and cannot pay bills, but is able to manage a joint savings account with help. The ALJ noted that plaintiff has a consistently normal appearance, and the ALJ found it notable that plaintiff is able to address his concerns in and out of school appropriately, demonstrated emotional processing skills and the ability to regulate his anxiety, and increased his coping skills throughout the relevant period. The ALJ also observed that plaintiff's judgment has been variable, noting that at times plaintiff demonstrated fair to limited insight and judgment and at other times demonstrated logical judgment. And the ALJ took into consideration plaintiff's

history of suicidal ideation and inpatient hospitalization and plaintiff's reports of "self-harm including punching and cutting when frustrated." In accounting for plaintiff's moderate limitation in adapting or managing himself, the ALJ limited plaintiff "to simple, routine tasks with no more than simple decision making, occasional and minor changes in the work setting, and the exercise of only simple judgment."

Later in the decision, the ALJ specifically addressed plaintiff's argument that he is unable to tolerate changes in the work setting and plaintiff's report to treating providers that he has a "hard time with sudden changes." [15-1] 22. However, the ALJ found that a greater limitation than imposed in the RFC was not supported by the record. Citing the same observations as summarized above, the ALJ found that "the record contains numerous examples of the claimant's ability to adapt to changes," including his ability to travel, use public transportation, navigate by bicycle to make food deliveries, attend concerts, and "juggle work, school and a busy social calendar." The ALJ again noted that plaintiff is able to address his concerns in and out of school appropriately, demonstrated anxiety regulation and emotional processing skills, and increased his coping skills throughout the relevant period. Additionally, the ALJ pointed out that the record demonstrates that plaintiff has been able to adapt to other changes, including his mother's divorce, his girlfriend breaking up with him, writing and recording his own music album, and planning to start his own business. Accordingly, the ALJ found that plaintiff's impairments were adequately accommodated by limitations to simple and routine tasks with no more than occasional and minor changes in the work setting.

Plaintiff criticizes the ALJ's assessment of this area of functioning for largely focusing on plaintiff's ability to perform basic life activities "to cancel out multiple hospitalizations for suicidal ideation and frequent reports of self-harm." [17] 9. Plaintiff argues that the ALJ improperly cherry-picked examples of an ability to adapt from the record based largely upon travel, part-time work, and wrestling in mosh pits. [*Id.*] 12 (citing [15-1] 22). The Court addresses the ALJ's consideration of plaintiff's activities and treatment history in more detail in the following sections, but notes here that the ALJ did not rely solely on plaintiff's activities nor improperly disregard the evidence of plaintiff's hospitalizations for suicidal ideation.

Plaintiff also challenges the ALJ's finding that plaintiff can tolerate changes in the work setting, asserting that the record "overwhelmingly suggests otherwise." [17] 12. In support, plaintiff cites examples of mental status exams and treatment records demonstrating his decreased attention and concentration, anxious mood, fair to limited insight and judgment, abnormality in mood and thought processes, difficulty processing information, and emotional dysregulation when overwhelmed and misunderstanding social cues. [*Id.*] Plaintiff also highlights records reflecting that plaintiff acts very impulsively and experiences anger outbursts, instances of self-harm, and meltdowns. [*Id.*] However, plaintiff does not point to any records that the

ALJ did not consider, and plaintiff even states that "the ALJ acknowledged" these mental status examinations. [*Id.*] Plaintiff suggests that it was error for the ALJ to find that the records cited by the ALJ outweigh the records demonstrating substantial limitations. But this argument amounts to a disagreement with how the ALJ weighed the evidence and is not a basis for remand. This Court "cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327; *Chavez*, 96 F.4th at 1021.

Next, in interacting with others, the ALJ found that plaintiff has a moderate limitation. The ALJ noted that plaintiff "has difficulty interpreting social cues and difficulty processing social information" and, as a result, can "get overwhelmed and emotionally dysregulated." [15-1] 17. The ALJ observed that plaintiff "can have some difficulty processing conflict and once in a while will respond in a less than socially acceptable manner," but also that plaintiff "has developed social skills, including social decision making skills." The ALJ noted plaintiff's reports of angry outbursts and difficulty communicating. The ALJ also noted evidence in the record where plaintiff exhibited "rapid, pressured speech" at times and where plaintiff was "cooperative . . . with good eye contact . . . and appropriate behavior." Turning to plaintiff's hearing testimony, the ALJ pointed out that plaintiff endorsed "no problems interacting with crowds at concerts, including crowd surfing and participating in mosh pits" and that plaintiff "testified that he has a group of friends that he will get together with, including going to concerts, going to the bar, or visiting at houses." The ALJ also acknowledged that plaintiff's "mood has been variable," as at times, plaintiff "has demonstrated an anxious mood . . . or an angry mood," but "at other times he has demonstrated an appropriate mood and affect." In consideration of all this, the ALJ accounted for plaintiff's moderate limitation in interacting with others "by precluding work involving direct public service, in person or over the phone, as well as tandem tasks, and by limiting the claimant to only brief and superficial interaction with supervisors and coworkers."

Later in the decision, the ALJ specifically addressed plaintiff's assertion that he is unable to work due to angry outbursts at work and found that this allegation is not supported by or consistent with the record. [15-1] 23. The ALJ pointed out that plaintiff has worked in three separate jobs throughout the relevant period and "there are no employer records or other evidence to demonstrate that the claimant experienced verbal outbursts at work[.]" The ALJ acknowledged record evidence showing that plaintiff "has rigid thinking, difficulty interpreting social cues, difficulty processing social information, and difficulty communicating at times." But the ALJ also noted that plaintiff "has developed social skills, including social decision making skills" and that "the record does not document significant ongoing abnormal behavior during treatment visits." Accordingly, the ALJ reiterated that he was limiting plaintiff to no direct public service, no tandem work, and only brief and superficial

10

interaction with coworkers and supervisors, but that "the record as a whole does not suggest greater limitation."

Plaintiff does not agree with the ALJ's assessment, criticizing the ALJ's suggestion that an improvement in coping skills and an ability to "socialize in mosh pits, for example, cancels out substantial evidence of social anxiety." [17] 13. Plaintiff repeatedly seizes on this one example the ALJ considered in weighing the evidence, again criticizing the ALJ for observing that plaintiff "has cooperated at examinations and can interact, for example, in bars and mosh pits." [*Id.*] 8 (citing [15-1] 17). But the ALJ's findings were not limited to that one observation. As summarized above, the ALJ noted several examples of record evidence demonstrating that plaintiff's social impairments were not as limiting as alleged and plaintiff fails to point to any "substantial evidence of social anxiety" that the ALJ ignored in his assessment. Plaintiff highlights his testimony that he struggles with interactions even when working only six to eight hours per week. [17] 8 (citing [16-1] 2164). But the decision does not demonstrate that the ALJ failed to consider plaintiff's testimony and ultimately, "an ALJ need only include limitations that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Even if plaintiff's testimony had permitted the ALJ to impose greater limitations, "there is nothing that compels them." *Delong v. Saul*, 844 F. App'x 894, 900 (7th Cir. 2021). And the ALJ *did* take plaintiff's reported social anxiety and struggles with social interactions into account by tailoring the RFC to accommodate these difficulties and placing significant limitations on plaintiff's ability to interact with others in the workplace. The ALJ explicitly found that plaintiff "is precluded from work involving direct public service, in person or over the phone, and from engaging in tandem tasks," as well as "can tolerate only brief and superficial interaction with supervisors and coworkers" due to plaintiff's "difficulty understanding social cues, his complaints of anxiety and his reported angry outbursts[.]" [15-1] 21.

Finally, the ALJ found that plaintiff has a moderate limitation in understanding, remembering, or applying information. [15-1] 16–17. The ALJ noted plaintiff's school history and that he takes online classes through a local community college and enjoys writing music, researching politics, and playing video games. The ALJ found that treatment records show normal thought content. The ALJ acknowledged that plaintiff "sometimes needs cues to ask follow up questions" and considered plaintiff's mother's report that when following complex instructions, plaintiff needs steps broken down and that plaintiff requires reminders to take medication. The ALJ summarized the results of the consultative exam, observing that plaintiff "was able to perform simple calculations, but not more complicated calculations," "could name the last two presidents, but not the two prior to that," and "was unable to understand or explain proverbs or similarities and differences." The ALJ acknowledged that during the consultative exam, plaintiff "was considered an inadequate informant . . . and demonstrated a poor memory," but observed that treatment records show an intact memory. Plaintiff's brief does not raise any

particular arguments as to the ALJ's assessment of this area of mental functioning and the Court does not see any error in the ALJ's analysis.

Based on the foregoing, the Court finds that plaintiff has identified no error warranting remand in the ALJ's assessment of the paragraph B criteria and the restrictions imposed by the ALJ in the RFC accounting for plaintiff's mental limitations.

## 2. Treatment History and Medications

Plaintiff argues that the ALJ erred in his consideration of plaintiff's treatment history and medications. [17] 10–11. The Court notes that plaintiff's brief does not explicitly raise a challenge that the ALJ erred in making a credibility determination pursuant to SSR 16-3p, instead criticizing the ALJ's consideration of treatment history, medications, and activities of daily living in assessing his mental limitations. But the two are intertwined and involve the same concerns. "Social Security Ruling 16-3p explains factors to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (citing SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. § 404.1529). These factors include daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate symptoms; and treatment, other than medication, that an individual receives or has received. SSR 16-3p, 2017 WL 5180304, at *7–8; 20 C.F.R. § 404.1529(c)(3). The "Court will uphold an ALJ's credibility determination unless that determination is 'patently wrong,'" *Wilder*, 22 F.4th at 653, but "an ALJ still must competently explain an adverse-credibility finding with specific reasons 'supported by the record[.]'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

Plaintiff challenges the ALJ's assessment of plaintiff's history of psychiatric hospitalizations for suicidal ideation and reports of self-harm, arguing that the ALJ improperly relied upon an absence of constant or permanent hospitalization. [17] 9, 10, 12. Plaintiff refers to the ALJ's decision as "undermining the significance of multiple hospitalizations," [*id.*] 9, but the Court does not agree with this characterization. The ALJ summarized the four inpatient hospitalizations plaintiff underwent during the relevant period and the symptoms plaintiff experienced. [15-1] 20. The ALJ stated that he was "cognizant of the seriousness of these hospitalizations occurring at approximately one-year intervals," but found that "[t]he record as a whole supports that, with the exception of these periods, the claimant had considerable ability to function" and that "these periods of inpatient treatment [would not] result in excessive absences precluding competitive work." [*Id.*] Later in the decision, the ALJ noted that although plaintiff "has experienced multiple inpatient psychiatric hospitalizations, he has not required more intensive care, such as a partial hospitalization program, in between such hospitalizations" because

"[m]edications were effective in helping to control the claimant's symptoms." [*Id.*] 21. The ALJ observed that "the record shows a two-and-a-half-year period without any hospitalization, which does not suggest greater ongoing limitations than those adopted" in the RFC. [*Id.*]

Plaintiff is correct that "the Seventh Circuit has warned ALJs against relying on a claimant's failure to seek emergency medical care as evidence of the severity of a symptom or condition." *Jennifer S. v. Kijakazi*, No. 20-cv-50239, 2022 WL 279554, at *7 (N.D. Ill. Jan. 31, 2022) (citing *Goins v. Colvin*, 764 F.3d 677, 679-80 (7th Cir. 2014)). And ALJs cannot rely "on the lack of inpatient hospitalizations without explaining why that form of treatment would be necessary for Plaintiff's impairments." *Jennifer*, 2022 WL 279554, at *7. But where, as here, an individual's record demonstrates a history of inpatient hospitalizations and emergency medical care, it is appropriate and relevant for the ALJ to note when an absence of this level of care occurs. *Elizabeth A. D. v. Saul*, No. 19 C 6024, 2021 WL 148831, at *6, 13 (N.D. Ill. Jan. 15, 2021). This is especially true when the ALJ also observes that the lack of such serious care is coupled with medication and other treatment. The ALJ noted that "[o]utside of his hospitalizations, the claimant has received regular ongoing treatment" which has "consisted of regular follow up visits for management of multiple psychiatric medications." [15-1] 20. The ALJ stated that in January 2020, plaintiff "started regular individual counseling focused on stabilizing the claimant's mood, increasing tolerance for changes in routine and environment, and eliminating self-abusive behaviors." [*Id.*] The ALJ found that these "mental status examinations were generally stable," but that plaintiff did have "some documented abnormality in his mood . . . and thought processes . . . at times." [*Id.*] 20–21. And the ALJ observed that "[m]edications were effective in helping to control the claimant's symptoms," as demonstrated both in the record and in plaintiff's hearing testimony. [*Id.*] 21. The ALJ even accounted for plaintiff's "ongoing use of psychotropic medication" by limiting plaintiff "to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery." [*Id.*] 26.

Plaintiff criticizes the ALJ's reliance on his positive response to treatment and the effectiveness of his medications, suggesting that the ALJ "played doctor" and reached his own independent medical conclusion without support from the medical evidence. [17] 6, 10. Plaintiff argues that the ALJ's reliance upon improvement was misguided because "[i]mprovement does not give an accurate description of an individual's true neurological state." [*Id.*] 10 (citing *Murphy v. Colvin*, 759 F.3d 811 (7th Cir. 2014)). And plaintiff acknowledges that he "has readily admitted that medication has been helpful," but asserts that this "does not support a leap to a finding that he can sustain full-time work." [*Id.*] 10–11. The ALJ made no such leap, nor was the ALJ impermissibly playing doctor. Rather, as explained, the ALJ appropriately considered plaintiff's treatment history and the effectiveness of medication pursuant to SSR 16-3p, and an ALJ does not err in observing that an

individual's "symptoms are largely controlled with proper medication and treatment." *Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007).[5] Nor does the Court agree that the ALJ erred "in his refusal to recognize the distinction between improved functioning and improvement to the point where an individual could sustain the requirements of full-time work." [17] 6. It is true that "'one's medical condition could improve drastically, but [one can] still be incapable of performing' the relevant work." *Jarnutowski*, 48 F.4th at 773 (alteration in original) (quoting *Murphy*, 759 F.3d at 819). "There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). But the ALJ did not rely solely on plaintiff's improvement with treatment and medication, nor found that plaintiff had entirely improved to the point of having no impairments. Rather, the ALJ explained in great detail how he weighed the evidence in the record, both favorable and unfavorable, and found that plaintiff was limited in several ways in the work he could perform. [15-1] 20–23. Although plaintiff raises several arguments as to why the ALJ's consideration of plaintiff's treatment history and medication was improper, the Court finds no error warranting remand.

### 3. Activities

Throughout his brief, plaintiff also challenges the ALJ's consideration of plaintiff's activities of daily living, another factor ALJs take into account when evaluating the intensity, persistence, and limiting effects of an individual's symptoms. SSR 16-3p; 20 C.F.R. § 404.1529. The Court notes that plaintiff "does not flesh out this argument, but instead simply cites *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)[.]" *Morrison v. Saul*, 806 F. App'x 469, 474–75 (7th Cir. 2020). *See* [17] 9–10. Again, plaintiff does not explicitly challenge the ALJ's credibility determination under SSR 16-3p, but the Court addresses how the ALJ considered plaintiff's activities in the decision.

Plaintiff argues that the ALJ erred in relying on plaintiff's ability to perform basic daily life activities, including household chores, working part time, and his ability to travel and go places. [17] 9–10. As discussed, plaintiff also takes issue with the ALJ's consideration of plaintiff's social activities, such as going to bars and participating in mosh pits at concerts. [*Id.*] 8, 12, 13. "[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022) (quoting *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016)). And SSA regulations instruct that "an ALJ is required to evaluate a claimant's activities of daily living and explain why the claimant's activities are inconsistent with [his] description of [his] symptoms." *Danny T. v. O'Malley*, No. 23 C 15008, 2024 WL 4170207, at *3 (N.D. Ill. Sept. 12, 2024); *Michelle*

---

[5] *See, e.g.*, *Brown v. Saul*, 799 F. App'x 915, 919 (7th Cir. 2020); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006); *Martin D. v. Kijakazi*, No. 22 C 5168, 2023 WL 8601522, at *3 (N.D. Ill. Dec. 12, 2023); *Elizabeth A. D.*, 2021 WL 148831, at *13.

*M. L. v. Kijakazi*, No. 20 C 6793, 2022 WL 3297619, at *11 (N.D. Ill. Aug. 11, 2022); SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(i). But plaintiff is correct that there are crucial differences between activities of daily living and the rigors of full-time employment such that ALJs "may not equate activities of daily living with those of a full-time job." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) (citing *Alvarado*, 836 F.3d at 750). Yet that is not what the ALJ did here. Rather, as merely one factor in his analysis, the ALJ found that plaintiff's "wide-ranging activities of daily living" indicated a much higher degree of functioning than alleged and that these activities supported plaintiff's ability to work within the significant limitations adopted in the RFC. [15-1] 21–22. *See Morrison*, 806 F. App'x at 475 (noting that the ALJ properly "found that [the plaintiff's] admitted activities were not entirely consistent with the level of limitation that he alleged").

For example, the ALJ noted that plaintiff's extensive activities demonstrated in the record and plaintiff's hearing testimony included "attending concerts by himself or with friends, participating in open mic nights, volunteering for a political campaign, writing and recording music, creating plans for a small business, considerable chores, caring for siblings, and attending community college." [15-1] 21. *See also* [*id.*] 18 (noting plaintiff's hearing testimony that he does not cook, but he can vacuum, clean bathrooms, and do the dishes, as well as walk his siblings to school). And the ALJ observed that plaintiff "has traveled throughout the relevant period, including to visit family, attend state fairs, go skiing, attend concerts and go to amusement parks." [*Id.*] 21. *See also* [*id.*] 22 (noting that the record demonstrates that plaintiff "is able to juggle work, school and a busy social calendar"). This level of activity is not merely an ability to perform household chores or the kind of minimal, fairly restricted, or sporadic activity courts have found inconsistent with an ability to engage in substantial gainful activity. *Cf. Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020); *Ghiselli v. Colvin*, 837 F.3d 771, 777–78 (7th Cir. 2016); *Engstrand*, 788 F.3d at 661; *Bjornson*, 671 F.3d at 647. Furthermore, an ALJ is also "required to consider the limitations in how a claimant performs daily activities." *David S. v. O'Malley*, No. 23 C 15144, 2024 WL 3426806, at *3 (N.D. Ill. July 15, 2024) (quoting *Heidi R. v. Saul*, No. 18 CV 8534, 2019 WL 13209274, at *4 (N.D. Ill. Oct. 11, 2019)). But plaintiff has not pointed to any part of the record demonstrating that plaintiff has only been able to complete these activities with specific limitations or assistance. To the contrary, the ALJ specifically noted, for example, that the record and plaintiff's hearing testimony demonstrate that plaintiff "can independently travel," such as by bicycle, can "navigate the community using public transportation," "was able to travel to and from Michigan without family using trains and an airplane," and "was able to attend a two-day concert by himself, including using public transportation to get to and from the concert." [15-1] 18, 22. Most notably, even considering these activities and finding that they demonstrated a higher degree of functioning than alleged, the ALJ still imposed significant functional limitations in the RFC to accommodate plaintiff's mental impairments.

The ALJ also pointed to plaintiff's work activity throughout the relevant period, explicitly acknowledging that it was "on a part time basis":

> The claimant has also worked as a bellhop, albeit on a part time basis, throughout the relevant period (hearing testimony, 1E, 3E/3). While his work activity has not risen to the substantial gainful activity level, he was offered a full-time job, but turned it down (13F/147). However, the claimant started a second job at a bike shop and requested to work more hours at the hotel (13F/165). He also worked as a delivery driver for Door Dash, using his bicycle to make deliveries (19F/1).

[15-1] 21–22. Again, plaintiff asserts it was improper for the ALJ to "use Plaintiff's admirable attempts to perform part-time work against him." [17] 9, 11. As plaintiff points out, the Seventh Circuit has "cautioned ALJs not to draw conclusions about a claimant's ability to work full time based on part-time employment." *Lanigan*, 865 F.3d at 565 (citing *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010)). This is "especially true when" a plaintiff's "employer is accommodating him." *Lanigan*, 865 F.3d at 565 (citing *Larson*, 615 F.3d at 752). Plaintiff does not point to any such accommodations and the record does not reflect that plaintiff was receiving assistance from his employer that the ALJ failed to mention. *Faith H. v. Kijakazi*, No. 20-cv-04311, 2023 WL 2561615, at *10 (N.D. Ill. Mar. 17, 2023) (citing *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008)). To the contrary, plaintiff testified to problems with his managers at his jobs for failing to understand or accommodate his autism. [16-1] 2164, 2165, 2167. Nor did the ALJ improperly equate plaintiff's part-time work with an ability to perform full-time work. The ALJ specifically acknowledged that plaintiff's work experience was part time, and this was merely one observation of many the ALJ made; the ALJ did not base his credibility determination or RFC assessment solely on this point. Finally, even if the ALJ erred in some way by considering plaintiff's part-time work activity, Seventh Circuit cases have found that "flaws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [a claimant] was exaggerating [his] symptoms" because "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are[.]" *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (emphasis in original) (citing *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). *See also Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023) ("Although the ALJ might have erred in his analysis of some factors, enough of them had adequate supporting evidence for this court to uphold his credibility determination.").

Plaintiff does not identify any specific errors in the ALJ's consideration of his activities. Instead, plaintiff's arguments amount to a disagreement with the weight the ALJ gave to plaintiff's various activities in assessing plaintiff's allegations of mental impairments and considering whether plaintiff is as disabled as alleged. Again, the Court "cannot substitute its own judgment" for the ALJ's and reweigh

evidence or determine credibility. *Stephens*, 888 F.3d at 327; *Chavez*, 96 F.4th at 1021. The Court finds no error in the ALJ's consideration of plaintiff's activities warranting remand.

### 4. Conclusion

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's assessment of plaintiff's mental impairments and that the ALJ built the requisite logical bridge from the evidence to his conclusions. Plaintiff has identified no legal error in the ALJ's analysis, nor pointed to any evidence that the ALJ ignored. The Court cannot agree with plaintiff's assertion that the ALJ engaged in impermissible cherry-picking and failed to account for plaintiff's limitations within the context of a full-time work environment. Many of plaintiff's arguments amount to a disagreement with how the ALJ weighed the evidence. However, this Court "cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327; *Chavez*, 96 F.4th at 1021. The Court denies plaintiff's request to remand on this basis.

### B. Evaluation of Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the opinion evidence, arguing that even though each of his treating mental providers endorsed "marked" and work-preclusive limitations, the ALJ relied upon many of the same improper inferences discussed in the previous section to reject each of these opinions. [17] 13. Plaintiff asserts that the ALJ failed to provide proper support for his "wholesale rejection" of treating source statements. [22] 3.

Because plaintiff filed his case after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply for evaluating medical opinions. ALJs must consider the medical source provider's opinion "using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(a). These factors are (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the record or an understanding of Social Security disability policies and requirements. "In weighing the persuasiveness of a medical opinion, the 'most important factors' an ALJ considers are the opinion's 'supportability' and 'consistency' with the record." *Desotelle v. Kijakazi*, No. 22-1602, 2023 WL 4146246, at *2 (7th Cir. June 23, 2023) (citing 20 C.F.R. § 404.1520c(b)(2)). Supportability refers to the "internal supportability" of a medical opinion and assesses "the objective medical evidence and supporting explanations presented by a medical source" in supporting the opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency assesses how consistent a medical opinion is with the record evidence as a whole, including "evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* at §

404.1520c(c)(2). The regulation also contains articulation requirements, which include requiring ALJs to explicitly "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions" in the decision. 20 C.F.R. § 404.1520c(b)(2); *Bakke*, 62 F.4th at 1067–68. ALJs "may, but are not required to," explain how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2). Courts "do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and [courts] only overturn that weighing if no reasonable mind could accept the ALJ's conclusion." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). "When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." *Apke*, 817 F. App'x at 256 (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001)). In other words, "it is not for [the court] to tell the ALJ which of two inconsistent opinions he should credit." *Retzloff v. Colvin*, 673 F. App'x 561, 568 (7th Cir. 2016). *See also Wilson v. Berryhill*, 737 F. App'x 286, 290 (7th Cir. 2018) (stating that ALJs have "substantial discretion regarding which doctor to believe").

First, plaintiff argues that the ALJ erred in rejecting each of the three statements submitted by Dr. Langner, plaintiff's treating psychiatrist since 2016. [17] 14. The only specific criticism plaintiff offers for the Court's review is that "the ALJ faulted Dr. Langner for not supporting his opinion with specific explanations or citations, and instead checking off boxes." [*Id.*] (citing [15-1] 25). This refers to the ALJ's assessment of Dr. Langner's June 28, 2021 Mental Residual Functional Capacity Statement. [15-1] 25, 986–89. The ALJ briefly summarized the opinions in this form, noting that Dr. Langner opined that plaintiff's "impairments preclude performance of every identified mental activity for 15% or more of the workday" and that plaintiff "would be off task more than 30% of the day, absent more than six days per month, and 40% as efficient as other employees." [15-1] 25 (citing [*id.*] 986–89). The ALJ acknowledged that although "Dr. Langner is a treating professional and has a long-term relationship with the claimant, the degree of limitation alleged is not seen anywhere in the record, including in Dr. Langner's own treatment records." [*Id.*] The ALJ also noted that "Dr. Langner does not support his opinion with specific clinical findings, subjective symptoms, detailed explanations or reference to treatment records. Instead, he simply checks off pre-printed selections without support or explanation." [*Id.*] This refers to the form's instruction to "indicate the items upon which you base the opinions given in this Report" and the listed options, for which Dr. Langner checked "history & medical file," "consultative medical opinions," and "progress and office notes" without any additional explanation. [15-1] 989. Plaintiff suggests it was improper for the ALJ to fault Dr. Langner in this way, arguing that "[i]t is unrealistic to expect each treating physician to submit a fully sourced document for each patient, and, unless there is reason to believe otherwise, source statements are premised upon existing treatment records." [17] 14. But plaintiff offers no support for this argument and the Court sees no error in the ALJ's observation, which goes directly to the regulation's requirement that the ALJ

consider the "internal supportability" of a medical opinion and assess "the objective medical evidence and supporting explanations presented by a medical source" in supporting the opinion. 20 C.F.R. § 404.1520c(c)(1). "[T]he ALJ was entitled to discount the opinion of a medical professional who did not explain the basis of [his] conclusion." *Brumbaugh v. Saul*, 850 F. App'x 973, 976 (7th Cir. 2021) (citing *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010)).

It is also important to note that the ALJ did not reject Dr. Langner's June 2021 statement solely on this basis. Rather, the ALJ continued and engaged in a more thorough analysis of why he found the degree of limitation alleged in Dr. Langner's opinion "inconsistent with the record as a whole." *See* [15-1] 25. All of this goes toward consideration of the consistency factor, as required by the regulation. For example, the ALJ observed that even Dr. Langner's longitudinal and contemporaneous examination records did not support the degree of limitation alleged in his June 2021 opinion, as those records "demonstrated limited judgment and insight, and unspecified decreased attention and concentration, but intact memory, orientation and language." [*Id.*] (citing [15-2] 2129). The ALJ also found this opinion "inconsistent with contemporaneous counseling records," such as Mr. Tallman's treatment notes, "which document substantially normal mental status examinations." [*Id.*] (citing [15-2] 2070–2125). And the ALJ noted that Dr. Langner's June 2021 opinion appeared "internally inconsistent" because despite alleging significant and extreme limitations, Dr. Langner also indicated that plaintiff is capable of managing benefit payments. [*Id.*] (citing [*id.*] 989). *See Prill*, 23 F.4th at 751 (noting that a doctor's "opinion as to [the plaintiff's] limitations was internally inconsistent—as well as inconsistent with objective medical evidence in the record—so the ALJ was entitled to give his opinion less weight"). Plaintiff disagrees with the ALJ's conclusion, mentioning briefly that, "as discussed above, the treatment records themselves contain the supporting evidence the ALJ sought." [17] 14. However, as detailed in the previous section, the Court has found no error in the ALJ's consideration and weighing of the record evidence and plaintiff has not identified any line of contrary evidence that the ALJ ignored.

The ALJ also evaluated Dr. Langner's January 2021 and July 2021 statements, which opined that plaintiff "is 'fragile' and can decompensate with minor triggers." [15-1] 24–25 (citing [*id.*] 706–08; [15-2] 1642–43). The ALJ found these statements unpersuasive, noting, for example, that they are "inconsistent with Agency criteria for disability determinations" because they fail "to identify any specific functional limitations" and that they are inconsistent with Dr. Langner's own treatment records, "which demonstrate stable mental status examinations, without ongoing episodes of decompensation." [*Id.*] 24. The ALJ also acknowledged plaintiff's multiple psychiatric hospitalizations, but found that the opinion that plaintiff "decompensates with minor triggers" was undermined by treatment records showing "significant periods of stability, without the need for inpatient treatment, including a two-and-a-half-year period from June 2018 until December 2020." [*Id.*] The ALJ also observed that two of

plaintiff's psychiatric hospitalizations "were triggered by memories of past trauma, not by 'minor triggers.'" [*Id.*] Plaintiff does not make any specific argument as to how the ALJ erred in evaluating Dr. Langner's January 2021 and July 2021 statements. Plaintiff bears the burden, and "perfunctory and undeveloped" arguments are considered waived. *See, e.g., Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019); *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

Second, plaintiff provides a one-sentence argument that the ALJ erred in dismissing the opinion of Mr. Tallman, plaintiff's treating therapist, because the ALJ "resorted to his oft-repeated flawed inferences from daily activities, part-time work, travel, and mosh pits to undermine the opinion." [17] 14. As the Court detailed in the previous section, these arguments are unpersuasive and the ALJ did not err in including these considerations in his analysis. The ALJ evaluated Mr. Tallman's June 2021 report indicating that plaintiff's mental impairments "markedly" restrict cognitive functioning, social interaction, and sustained attention and concentration, and found it "somewhat persuasive." [15-1] 25–26 (citing [15-2] 1610–11). The ALJ first observed that Mr. Tallman's opinion, and the form itself, do not define the term "markedly": "The preprinted form did not allow for a range of severity, but rather asked Mr. Tallman to indicated 'Yes' or 'No' in response to marked limitations." [*Id.*] 26. The ALJ noted that although Mr. Tallman did "support his assessments with some specific examples" and these examples were "generally consistent with the record, such examples are not consistent with a marked limitation as defined by Agency criteria." [*Id.*] The ALJ found that Mr. Tallman's findings of "marked" limitations were inconsistent with plaintiff's activities and that although his report indicated "slowed processing speed and that tasks take longer to complete," such findings were not consistent with Mr. Tallman's own treatment records, which "more often than not," noted that plaintiff has intact thought processes. [*Id.*] The ALJ nevertheless agreed that plaintiff's noted "difficulty with social cues and resulting frustration is generally consistent with the record" and thus accounted for these limitations by "precluding work involving direct public service, in person or over the phone, as well as tandem tasks, and by limiting the claimant to only brief and superficial interaction with supervisors and coworkers." [*Id.*] The Court finds no error in the ALJ's consideration and evaluation of Mr. Tallman's opinion.

Third, plaintiff criticizes the ALJ's assessment of the consultative examiner's opinion, asserting that earlier in the decision, the ALJ "plucked out only the most benign findings, and ignored the fact that the examiner had been quite balanced in his assessment" and only later on acknowledged "the more dire findings in the assessment." [17] 14–15 (citing [15-1] 21, 24). As the Seventh Circuit has encouraged reviewing courts to read an ALJ's decision holistically, the Court does not see the significance of this observation. *See, e.g., Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021); *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015); *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004); *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.

1985). Plaintiff also argues that "the ALJ reiterated flawed inferences to bolster his rejection of the consultative examiner's opinion," referring again to the arguments addressed in the previous section. [17] 15.

The ALJ reviewed the September 2020 statement from Dr. Stone, who performed a psychological consultative exam and opined that plaintiff "had poor abilities in each of the four areas of mental functioning identified." [15-1] 24 (citing [*id.*] 555–59). Plaintiff takes issue with the ALJ's observations that Dr. Stone's assessment was "not consistent with Agency criteria for disability determinations" and that Dr. Stone did not define the term "poor" or otherwise identify any specific functional limitations. Plaintiff argues that Dr. Stone offered "a narrative description of reasons for each assessment." But these "reasons" were not specific functional limitations on plaintiff's abilities to work, as plaintiff's brief repeatedly stresses, "within the context of a full-time work environment." Plaintiff also suggests that the ALJ should not have criticized Dr. Stone for failing to define "poor" because "the word is not ambiguous" and "in any context," it "describes a condition that is inconsistent with functioning." [17] 15. However, the ALJ's observation was not incorrect. Dr. Stone did not define "poor," [15-1] 555–59, and the rating scale explained in the regulations and used by the SSA in evaluating mental impairments and rating the degree of a claimant's mental limitations does not use the term "poor." *See* 20 C.F.R. Part 404, Subpt. P, App. 1 §12.00(F)(2) ("We evaluate the effects of your mental disorder on each of the four areas of mental functioning based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation.").

Regardless, the ALJ's evaluation did not stop there. The ALJ also considered the fact that "Dr. Stone is not a treating professional, but rather performed a single examination of" plaintiff and noted that Dr. Stone "did not review longitudinal treatment records in reaching his opinion." [15-1] 24. The ALJ found that Dr. Stone's opinions were inconsistent with the record evidence and with plaintiff's significant activities of daily living, concluding that the "frequency and intensity of documented activities indicates a much greater degree of functioning than alleged by Dr. Stone." [*Id.*] For these reasons, the ALJ found Dr. Stone's assessment was not persuasive. This conclusion was supported by substantial evidence and plaintiff has identified no cause for remand in the ALJ's evaluation of Dr. Stone's opinion.

Finally, plaintiff alludes to an assertion that the ALJ erred when he "simply accepted the assessments of non-examining consultants as persuasive, even though he acknowledged they had not had access to the entire record." [17] 15 (citing [15-1] 23–24). Because perfunctory and undeveloped arguments are waived, the Court need not consider plaintiff's "single-sentence challenge." *Patricia v. O'Malley*, No. 20-cv-50388, 2024 WL 366466, at *5 n.3 (N.D. Ill. Jan. 3, 2024). *See also Krell*, 931 F.3d at 586 n.1; *Hall*, 906 F.3d at 644; *Crespo*, 824 F.3d at 674. Nevertheless, the Court finds there is no merit to plaintiff's cursory argument. The ALJ's decision fully acknowledged and considered that the state agency consultants did not review the

entire record, and the ALJ explained in detail why he found that this did not change or undermine their findings. [15-1] 23–24. Specifically, the ALJ concluded that "the evidence received at the hearing level did not contain any new or material evidence that would suggest a marked limitation in any of the paragraph B criteria." Rather, the ALJ observed that this evidence demonstrated that plaintiff had generally stable mental status examinations and reported improvement in symptoms with medication, as well as did not require inpatient hospitalization from June 2018 until December 2020, was able to work in three separate jobs, and maintained a wide array of activities. As discussed in the previous section, the Court does not find plaintiff's challenges to the ALJ's reliance on these points persuasive. Contrary to plaintiff's assertion, the ALJ did not "simply accept" the opinions of the state agency consultants as persuasive. Instead, the ALJ considered the opinions alongside the record evidence and imposed *greater* limitations than those opined by the consultants. The Court finds no error in the ALJ's evaluation of the opinions of the state agency consultants.

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's evaluation of the opinion evidence, the ALJ adequately explained his reasoning, and plaintiff has identified no legal error in the ALJ's assessments. Accordingly, the Court denies plaintiff's request to remand on this basis.

## Conclusion

In its "extremely limited" role to apply a "very deferential standard of review to the ALJ's decision," *Jarnutowski*, 48 F.4th at 773, the Court is persuaded that the ALJ supported the decision with substantial evidence and applied the correct legal standards. *Morales*, 103 F.4th at 472. Accordingly, plaintiff's request to reverse the SSA's decision [17] is denied, defendant's request for summary judgment [21] is granted, and the decision denying the application for benefits is affirmed.

_Heather K. McShain_
_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 28, 2025**